**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Patrick J. McKENZIE, John L. Wood, Ansel P. Allen, and Garth Stennett, Defendants–Appellants.**

**Nos. 89–3177, 89–3203, 89–3204 and 89–3243.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1990.

Decided Jan. 22, 1991.

Michael R. Pace, Asst. U.S. Atty., Office of the U.S. Atty., Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for U.S.

Nancy B. Murnighan, Office of the Federal Public Defender, Chicago, Ill., Michael B. Mann, Zavislak & Mann, Hillside, Ill., for Patrick McKenzie.

Nathan Diamond–Falk, Nancy B. Murnighan, Office of the Federal Public Defender, Chicago, Ill., for John L. Wood.

George T. Stephenson, Nancy B. Murnighan, Office of the Federal Public Defender, Chicago, Ill., for Ansel P. Allen.

Martin S. Agran, Agran & Agran, Nancy B. Murnighan, Office of the Federal Public Defender, Chicago, Ill., for Garth Stennett.

Before BAUER, Chief Judge, COFFEY, and KANNE, Circuit Judges.

BAUER, Chief Judge.

From 1986 to 1988, Patrick J. McKenzie, John L. Wood, Ansel P. Allen, and Garth Stennett (collectively "Defendants") coordinated a drug importation and distribution network that operated in Miami, Denver, Chicago, and the Bahamas. The network paid female couriers to transport drugs and money to each location. Its members rented "guest houses," apartments, and local hotel rooms in which the couriers would stay during their repeated trips. With Wood's participation, McKenzie ran the Miami territory; Stennett and Allen orchestrated the network's activities from Denver. The drug ring operated in the following manner: One of its members would call a courier when she was needed for a trip. When the courier arrived at one of the targeted cities, someone would pick her up at the airport to transport her to the "guest house," apartment, or hotel room. There the courier would be given a package of cocaine or money to carry on her person. She then would be driven back to the airport to fly to another network city. Once at her destination, the courier again would be picked up and driven to a "guest house" to deliver her package to one of the members of the ring.

The scheme came to the attention of the authorities when agents of the Immigration and Naturalization Service ("INS") arrested Allen on an unrelated immigration matter in May, 1988. Linda Brown, whom Allen had recruited to be a drug courier in early November, 1987, posted his bond. After a special agent from INS questioned Brown about the bond, she decided to cooperate with the government in its investigation of Allen's drug-related activities. The information she provided led to a search of Allen's house that revealed guns, scales and weights, a passport, and false identification. Federal agents arrested Allen for his role in the drug distribution conspiracy on June 24, 1987.

Brown also tipped the government to the fact that McKenzie had contacted her to do a drug run between the Bahamas and Chicago. Agents from the federal Drug Enforcement Agency ("DEA") instructed

Brown to contact them upon her return to inform them if she had packages or money. Stennett wired Brown money for her plane ticket, and she made the trip. Per the pre-arranged plan, when Brown returned to Chicago with three packages of cocaine, she contacted the DEA. Agents arrested McKenzie on July 4, 1988, at the hotel where the drug drop was to have been made. The DEA arrested Wood on September 9, 1988, outside the Miami "guest house." Stennett was arrested in Chicago on February 10, 1989.

On February 21, 1989, a grand jury returned an eighteen count superseding indictment charging McKenzie, Wood, Stennett, and Allen with violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute cocaine), § 846 (conspiracy to possess with intent to distribute in excess of 25 kilograms of cocaine), § 952(a) (importation of cocaine), 960(a)(1) (importation of cocaine), and § 963 (conspiracy to import cocaine). The government tried Defendants together in May, 1989, and the jury convicted McKenzie and Stennett on all counts. Wood was found guilty of conspiracy, importation, and possession with intent to distribute cocaine. The jury found Allen guilty of attempt and conspiracy to possess with intent to distribute cocaine, and importation and distribution of controlled substances. In this appeal, McKenzie, Wood, Allen, and Stennett challenge several aspects of their trial. We address each one in turn.

## I. CONSOLIDATED ARGUMENTS

### A. Prosecutor's Statement During Rebuttal

 Initially, Defendants claim that the district court erred in denying their motions for a new trial. Defendants argue that a "grievous, fatal, and incurable" statement made by the prosecution at trial violated their fifth amendment privilege against self-incrimination and improperly shifted the burden of proof to them to prove their innocence. The statement came when, after the Government's initial closing argument and four hours of defense closing arguments, the prosecution stated during rebuttal: "At the conclusion of all the defense arguments it should be clear to you that if there is no evidence in support of a person's claim of innocence, then the law is argued. There was no evidence in this case favorable to the Defendants—." Counsel for each defendant objected to this comment. In a sidebar discussion with the judge and defense counsel, the Government apologized to the court for having suggested that the burden of proof was on the Defendants, and indicated that his statement had been "unintentional." The court denied a defense motion for a mistrial and instructed the jury to disregard the comment. In so doing, the court reminded the jury that "the defendants in a criminal case have no obligation to prove anything."

To decide whether a prosecutor's comments during rebuttal argument are so prejudicial as to warrant a new trial, we view the comments in the context of the entire record. *United States v. Brantley*, 786 F.2d 1322, 1330 (7th Cir.), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986). Our primary task is to determine whether the comments " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process,' " *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1985) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)), and whether they affected the jury's ability to adjudge the evidence fairly and objectively. *United States v. Young*, 470 U.S. 1, 12, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985).

We have held that a prosecution reference to the "uncontradicted" or "unrefuted" nature of the government's evidence may violate the defendant's fifth amendment privilege against self-incrimination if the remark has "the natural and necessary effect of calling the attention of the jury to [the defendant's] failure to testify." *United States v. Lyon*, 397 F.2d 505, 509 (7th Cir.), *cert. denied sub nom. Lysczyk v. United States*, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968). For example, if the defendant is the only witness who can re-

but the prosecution's evidence, a comment that "there is no evidence in support of his claim of innocence" or "no evidence favorable to defendant" certainly draws the jury's attention to the defendant's absence from the witness box. When there is other evidence that links the defendant to the crime, however, such comments by the prosecutor would not "naturally and necessarily" remind the jury that the defendant had not testified. *See United States ex rel. Adkins v. Greer,* 791 F.2d 590, 597 (7th Cir.), *cert. denied,* 479 U.S. 989, 107 S.Ct. 584, 93 L.Ed.2d 586 (1986).

We have here the latter scenario. The overwhelming evidence adduced at trial was that Defendants arranged trips for the couriers, supplied them with drugs and money, transported them to and from airports, and arranged their stays in "guest houses" where money and drugs were exchanged. In total, the jury heard approximately three weeks of testimony and several hours of closing arguments. Thus the prosecutor's one stray remark, however unartful, would not have made much of an impact.

It also is important to keep in mind that the disputed statement was made during the prosecution's rebuttal of Defendants' closing arguments. Defendants' counsels had just reviewed for the jury their theory of the Government's case, including their view that the testimony of the cooperating witnesses [1] was inherently unreliable and that the evidence linking Defendants to the conspiracy was circumstantial. The context suggests that the Government merely was editorializing on the weaknesses in that argument rather than commenting on Defendants' failure to testify. If a prosecutor's comment is "a fair response" to statements made by defense counsel, then there is no fifth amendment violation, *United States v. Robinson,* 485 U.S. 25, 32, 108 S.Ct. 864, 869, 99 L.Ed.2d 23 (1987), nor does the comment alter the burden of proof. *United States v. Sblendorio,* 830 F.2d 1382, 1393 (7th Cir.1987), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1034, 98 L.Ed.2d

998 (1988). Moreover, immediately after the Government made the statement, the trial judge instructed the jury to disregard it and reminded them that the burden of proof at all times remained with the Government. In light of the entire record, we find that the comment did not so infect the trial with unfairness to violate due process, nor did it influence the jury verdict to merit the reversal of the convictions.

**B. Special Verdict**

■ Defendants join together in one other argument. They allege that the district court committed reversible error in refusing their request for a special verdict. Because sentences imposed under the Sentencing Guidelines factor in the amount of drugs involved in the offense, defense counsel requested that the court submit a special verdict to the jury that would determine the amount of cocaine involved relative to the conspiracy counts. The requested special verdict asked the jury to answer the following question: "How many grams of cocaine were possessed with the intent to distribute, were imported, or were distributed by members of the charged conspiracy during its duration?" Defendants submit that special findings were necessary in their case because, with the exception of the 1,200 grams taken at the time of the arrests, the bulk of the cocaine involved in the conspiracy was never recovered; therefore, without the special verdict, there would be no way to know how much cocaine actually was involved.

A special verdict was not needed. First, the sixth amendment requires that a jury determine only questions of guilt or innocence; punishment is the province of the court. Second, courts of review give great deference to trial courts in matters of sentencing. We review district courts' factual findings in determining an appropriate criminal sentence for clear error. 18 U.S.C. § 3742(e); *United States v. White,* 903 F.2d 457, 460 (7th Cir.1990); *United States v. Herrera,* 878 F.2d 997, 999–1000

---

**1.** In addition to Linda Brown, another courier, Alisa Gore, cooperated with the authorities and testified for the government.

(7th Cir.1989). If we are not left with the definite and firm conviction that a mistake has been committed, the sentence imposed will be affirmed. In criminal cases to which the Sentencing Guidelines apply, the trial judge must resolve "a myriad of factual issues that bear on the calculation of the relevant offense level and criminal history category," including the quantity of drugs involved in the offense. *United States v. Sheffer*, 700 F.Supp. 292, 293 (D.Md.1988). *See also United States v. Savage*, 891 F.2d 145 (7th Cir.1989) (trial court correctly refused defendant's request to have the scope of the conspiracy determined by jury through special interrogatories).

Third, because the amount of cocaine was described in the substantive counts of the indictment, the jury was required effectively to determine the weight of the cocaine as part of any finding of guilt on any of the substantive charges. In addition, because several of the distribution and importation counts overlapped for purposes of counting the amount of cocaine involved in the conspiracy, the government and defense counsel *agreed* on 18.5 kilograms for purposes of sentencing. Any special interrogatory to the jury regarding drug amount would have been superfluous.

## II. DEFENDANT MCKENZIE'S CHALLENGES

### A. Applicability of Sentencing Guidelines

■ For his part, McKenzie attacks his sentence with a variety of weapons, all of which miss the target. McKenzie's biggest missile is that the Sentencing Guidelines do not apply to him at all. According to him, some of the overt acts charged in the indictment relate and flow from a single conspiracy scheme that began prior to November 1, 1987, the effective date of the Guidelines. Thus, his argument continues, the

application of the Guidelines violates the ex post facto clause of the United States Constitution. U.S. CONST. art. I, sec. 9, cl. 3.

It is true that the Sentencing Guidelines apply only to those defendants whose offenses were committed on or after November 1, 1987, *see* 18 U.S.C. § 3551; *United States v. Stewart*, 865 F.2d 115, 118 (7th Cir.1988), and the evidence does indicate that McKenzie engaged in acts as part of the same conspiracy before, as well as after, the effective date of the Guidelines. The problem of determining the date of an offense of a continuing nature for ex post facto purposes has been examined by scholars and courts alike. In their hornbook on criminal law, Professors Lafave and Scott have written that, if criminal conduct of an ongoing nature begins before and continues after the enactment of a sentencing statute, application of the statute does not violate the ex post facto clause. W. LaFave & A. Scott, *Criminal Law* 94 (1972). This court, too, has considered the problem. In *United States v. Fazio*, 914 F.2d 950 (7th Cir.1990), we joined the many other circuits [2] that have concluded that application of the Guidelines to defendants whose offenses began before and continued after November 1, 1987, does not violate the ex post facto prohibition. Application of the Guidelines to McKenzie was not erroneous.

### B. Sufficiency of the Evidence for Purposes of Sentencing

We also reject McKenzie's other contention that his sentencing with a Base Offense Level of 32 was improper because the prosecution did not prove that the contents of the courier packages contained 18.5 kilograms of transported or possessed cocaine. The prosecution proved that the couriers made at least sixteen trips carrying one to three packages of cocaine per trip. The last packages the couriers car-

---

**2.** *See, e.g., United States v. Walton*, 908 F.2d 1289, 1299 (6th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990); *United States v. Williams*, 897 F.2d 1034, 1040 (10th Cir.1990); *United States v. Sheffer*, 896 F.2d 842, 844–45 (4th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 432, 112 L.Ed.2d 416 (1990); *United States v. Thomas*, 895 F.2d 51, 57 (1st Cir.1990); *United States v. Rosa*, 891 F.2d 1063, 1068–69 (3rd Cir.1989); *United States v. Story*, 891 F.2d 988, 992–96 (2d Cir.1989); *United States v. Walker*, 885 F.2d 1353, 1354 (8th Cir.1989); *United States v. Gray*, 876 F.2d 1411, 1418 (9th Cir. 1989), *cert. denied*, — U.S. —, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990); *United States v. White*, 869 F.2d 822, 826 (5th Cir.), *cert. denied*, 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989).

ried before McKenzie's arrest contained cocaine. Some of the couriers saw cocaine in several of the packages, and McKenzie was observed weighing and packaging cocaine in his hotel room. Moreover, on several occasions, McKenzie and other Defendants informed the couriers that they were carrying kilogram amounts in each package, and that each package would fetch between $12,000 and $16,000. Based on this evidence, the jury convicted McKenzie of possessing and importing the amount specifically described in the indictment. If this evidence was sufficient to convict McKenzie, then it certainly was sufficient for purposes of proving the amount of cocaine for sentencing.

## C. Acceptance of Responsibility

■ Next, McKenzie argues that the district court erred in declining to give him credit for acceptance of responsibility. Section 3E1.1(a) of the Guidelines allows the sentencing court to reduce the offense level by two levels "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." The question of whether a defendant has accepted responsibility for his crimes is a factual one, depending largely on credibility assessments by the sentencing judge. Because the sentencing judge is in a better position to evaluate the defendant's acceptance of responsibility than the reviewing court, the determination of the sentencing judge should not be disturbed unless it is without foundation. *United States v. Jordan*, 890 F.2d 968, 972 (7th Cir.1989). McKenzie has no factual basis for claiming credit of responsibility other than a statement he made to the court at sentencing that he had "made mistakes" in life. This showing is insufficient to overcome the great deference to which this determination of the district court is entitled.

## D. "Organizer" or "Leader" Role in the Conspiracy

■ Finally, McKenzie appeals the district court's determination that he was an "organizer" or "leader" under Guideline § 3B1.1(a), thereby increasing his offense level 4 points. McKenzie's role in the conspiracy is a fact question for the sentencing court to resolve, and we will not disturb it absent a showing of clear error. *Herrera*, 878 F.2d at 1000 (citing *United States v. Mejia–Orosco*, 867 F.2d 216, 220 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989)). Although the Guidelines do not define the terms "organizer" or "leader," Guidelines Application note 3 lists several factors distinguishing an individual in this category from others involved in the offense. These factors include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

When we apply these factors to this case, we can only conclude that the district court's sentence was well supported by the evidence. The scope of the illegal activity here was extensive, encompassing several couriers, cross-country trips, and numerous drugs-for-money transactions. Some seven co-conspirators were named in the indictment, but McKenzie undoubtedly was the linchpin of the operation. From his vantage point in Miami, he ordered the couriers from the supply cities in the Bahamas to the destination cities located throughout the United States. He ordered payments and provided funds. He even selected the couriers' clothing so that they would be less conspicuous when travelling. In light of these facts, the district court's finding that McKenzie planned, organized, and directed the criminal activity was not clearly erroneous.

## III. DEFENDANT ALLEN'S CHALLENGE TO THE *PINKERTON* INSTRUCTION

■ Allen follows a separate line of attack. According to him, he was in custo-

dy in mid-June of 1988 following his arrest on an immigration matter. Therefore, the argument goes, he could not have "possessed" the cocaine for importation and distribution. We disagree. Despite his detention by the INS, Allen possessed the cocaine for purposes of conviction. One conspirator can be held liable for the crimes of a co-conspirator, the only caveat being that the jury must be given an adequate instruction as to this theory of guilt. *See Pinkerton v. United States*, 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946). We have held that a *Pinkerton* instruction is adequate if it focuses the jury's on the conspirator's act, "on whether it is a crime, on whether the co-conspirator's guilt of this crime was proved beyond a reasonable doubt, and on whether it was committed in furtherance of the conspiracy in which the defendant participated."[3] *United States v. Manzella*, 791 F.2d 1263, 1268 (7th Cir.1986).

> The trial judge instructed the jury that [i]f you find beyond a reasonable doubt that the conspiracy charged in the indictment existed, and if it is established beyond a reasonable doubt by the defendant's own actions and statements that the defendant was a member of the conspiracy, then the acts and declarations of any other member of the conspiracy in or out of that particular defendant's presence, done to further the objects of the conspiracy and done during the time you find the conspiracy to have been in effect, may be considered as evidence against the defendant. When persons

enter into a conspiracy for an unlawful purpose, they become agents of one another.

We agree with Allen that this instruction failed to list every element of the *Pinkerton* doctrine with precision. In order for a *Pinkerton* instruction to be complete, it should state clearly that "the defendant can be convicted of a substantive crime committed by his codefendant in furtherance of the conspiracy," *Manzella*, 791 F.2d at 1268. The instruction also should "advise jurors that the government [bears] the burden of proving that all elements of the powerful *Pinkerton* doctrine must be proven beyond a reasonable doubt." *United States v. Elizondo, et al.*, 920 F.2d 1308, 1317 (7th Cir.1990). The instruction here did not tell the jury that Allen could be guilty of his co-conspirators' substantive offenses—possession and importation—nor did it directly address the government's burden of proving that the co-conspirators committed the substantive crimes.

Despite these deficiencies, there was no plain error resulting from the instruction having been given.[4] McKenzie, Wood, and Stennett were not merely Allen's co-conspirators; they also were his co-defendants. The jury that convicted them necessarily considered their guilt on the substantive counts when attributing their acts to Allen. That said, there was sufficient evidence to convict Allen of intent to distribute and import cocaine despite his INS detention in mid-June of 1988. His contention that he should be resentenced to ex-

---

**3.** This Circuit's *Pinkerton* instruction provides:

A conspirator is responsible for offenses committed by his fellow conspirators, if he was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of or as a natural consequence of the conspiracy.

Therefore, if you find a defendant guilty of the conspiracy charged in Count(s) ___ and if you find beyond a reasonable doubt that while he was a member of the conspiracy, his fellow conspirator(s) committed the offense(s) in Count(s) ___ in furtherance of or as a natural consequence of that conspiracy, then you should find him guilty of Counts ___.
3 Federal Criminal Jury Instructions of the Seventh Circuit 6 (1986).

**4.** The parties make much of whether Allen raised his *Pinkerton* claim for the first time in this appeal. Rule 30 of the Federal Rules of Criminal Procedure requires the defendant to object on the record to a district court's refusal of a proposed jury instruction in order to preserve the issue for appeal. The transcript of the instruction conference reveals that defense counsel voiced an objection on the record based upon his belief that the *Pinkerton* instruction essentially duplicated the general conspiracy instruction. This objection is not the same one voiced here—that the instruction did not fully set forth the theory of vicarious co-conspirator liability. Because Allen failed to preserve the issue for appeal, we review the *Pinkerton* claim under a "plain error" standard. *United States v. Green*, 779 F.2d 1313, 1319–20 (7th Cir.1985).

clude the four kilograms of cocaine related to the possession with intent to distribute count and the importation counts is rejected.

## IV. CONCLUSION

For the foregoing reasons, the convictions of all defendants on all counts are AFFIRMED.