946 F.2d 897
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Michael X. BOND, Defendant/Appellant.
 No. 90-1549.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 1, 1991.*
Decided Oct. 17, 1991.
 
 Before CUMMINGS, CUDAHY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 A jury found Michael X. Bond guilty of one count of conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), one count of interstate travel for the purpose of facilitating cocaine distribution, 18 U.S.C. § 1952(a)(3) and 2, and two counts of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He was sentenced under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") to 214 months imprisonment, a $5000 fine, five years of supervised release, and $200 in special assessments. Bond challenges that sentence. We affirm.
 
 I. BACKGROUND
 
 2
 The testimony at trial revealed that in December 1988, during the course of drug transactions that began in September or October of 1988, Bond asked Tony Brown, a boyhood friend, to accompany him to California. Bond paid for Brown's cab fare to and from the airports, his plane ticket, and his hotel room. Once in Los Angeles, they opened the suitcase that Bond had brought as well as the one that Bond had asked Brown to bring for him. At that time, Brown learned that both suitcases contained cash that had been stacked and rubberbanded. He also learned that Bond had been traveling from Los Angeles to Milwaukee bringing cocaine. Brown was paid $300 for carrying the cash and another $500 upon returning to Milwaukee with five kilograms of cocaine in each suitcase. Between January and August of 1989, Bond asked Brown to make several trips to Los Angeles, taking cash to Bond's brother and returning to Milwaukee with cocaine. Brown sold some of the cocaine in Milwaukee and gave the money to Bond.
 
 
 3
 After Drug Enforcement agents executed a search warrant on Brown's residence and found one kilogram of cocaine in a suitcase, Brown began cooperating with the agents and led them to Bond. Bond was arrested and charged with eight drug-related offenses. A jury found him not guilty on four of the counts and guilty on the other four.
 
 
 4
 Bond objected to the presentence report, which placed him at level 36 of the Guidelines before any adjustments. The court granted Bond's first objection regarding the amount of cocaine involved and reduced his base level to 34. However, the court agreed with the Probation Officer's recommendation of a two-point increase for Bond's role as a supervisor. Finally, the court found that Bond did not merit a two-point reduction for acceptance of responsibility. Consequently, his offense level was set at 36 with a criminal history level of II, which left him with a sentencing range of 210 to 262 months.
 
 II. ANALYSIS
 
 5
 Bond challenges his sentence on two grounds. He argues that the district court erred in finding that he acted as a "supervisor" and in finding that he was not entitled to a two-level reduction for acceptance of responsibility. We review a sentencing decision under the Guidelines for clear error. United States v. Davis, No. 90-2754, slip op. at 3 (7th Cir. July 26, 1991).
 
 A. Enhancement for Role as a Supervisor
 
 6
 In rejecting Bond's objection to the enhancement for his role as a supervisor, the district court found that Bond was in a supervisory role vis-a-vis Brown. The court noted that Brown, whose I.Q. was substantially lower than Bond's, would not have had the ability to supervise Bond and that others who were sophisticated in the drug distribution business dealt directly with Bond, not Brown. Bond argues that he and Brown were co-equals and that merely supplying Brown with drugs did not give him control over Brown or transform him into a supervisor.
 
 
 7
 Whether Bond was a supervisor under U.S.S.G. § 3B1.1(c)[1] is a question of fact. United States v. Camargo, 908 F.2d 179, 185 (7th Cir.1990). Factors that a sentencing court may consider in determining whether the defendant's role was supervisory are listed in the Guidelines:
 
 
 8
 the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 9
 U.S.S.G. § 3B1.1 Application Note 3. Moreover, the sentencing judge may "draw inferences 'from a variety of data, including the information in the presentence report and the defendant's statements and demeanor at the sentencing hearing.' " United States v. Herrera, 878 F.2d 997, 1000 (7th Cir.1989). In this case, the sentencing judge had the opportunity to deal with both Bond and Brown and make a credibility determination. Moreover, the evidence at trial showed that Bond had recruited Brown as his courier in a multi-state, multi-kilogram distribution business, the gross proceeds of which exceeded $100,000. Also, Bond did all the planning and made all of the decisions as to Brown's activities. Bond paid Brown's expenses and paid Brown relatively little for his services considering the risks that were involved. The evidence thus was sufficient to support the sentencing court's conclusion that Bond played a supervisory role in his criminal transaction.
 
 B. Acceptance of Responsibility
 
 10
 After the trial, Bond wrote the court a letter in which he accepted responsibility for his crimes. At sentencing, counsel asked that Bond be given a two-point adjustment for acceptance of responsibility.
 
 
 11
 U.S.S.G. § 3E1.1(a) provides for a two-level adjustment where a defendant has met his burden of "clearly demonstrat[ing] a recognition and affirmative acceptance of personal responsibility for his criminal conduct." The Application Notes indicate that although "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse," in the rare situation a defendant who goes to trial can demonstrate acceptance of responsibility, but those determinations are usually based on pre-trial statements and conduct. U.S.S.G. § 3E1.1 Application Note 2. Among the factors that a court may consider in determining whether a defendant qualifies for this adjustment are voluntary termination from the criminal conduct or surrender to authorities, voluntary admission regarding defendant's involvement in the offense and related conduct, and the timeliness of the defendant's manifestation of the acceptance of responsibility. U.S.S.G. § 3E1.1 Application Note 1.
 
 
 12
 Whether a defendant has accepted responsibility for his crimes is a factual question that largely depends on an assessment of credibility by the sentencing judge. United States v. McKenzie, 922 F.2d 1323, 1329 (7th Cir.1991). Thus we give the sentencing judge's determination on this point great deference on review. United States v. Lueddeke, 908 F.2d 230, 235 (7th Cir.1990) (emphasis in original) (citing U.S.S.G. § 3E1.1 Application Note 5).
 
 
 13
 The sentencing court considered several factors before denying the adjustment. The court first noted that Bond was arrested and thus neither voluntarily terminated his criminal activity nor surrendered promptly after the commission of his offense. Second, the court found that Bond's forthright admission in his letter did not come "from the heart" and that a factor to consider was how willing he was to share his experience to prevent others "from falling prey to this terrible poison." Finally, the court considered the timeliness of Bond's admission, by which the court meant "whether or not at the given turning point [Bond] did or withheld doing the activities or sharing information that might be helpful in this terrible war that we are involved in."
 
 
 14
 On appeal, Bond argues that the sentencing judge erred in denying him that adjustment by confusing "acceptance of responsibility" under U.S.S.G. § 3E1.1 with "substantial assistance to the government" under U.S.S.G. § 5K1.1. In support of his argument, Bond cites a recent case that this Circuit remanded for findings in light of the difference between sections 3E1.1 and 5K1.1. United States v. Escobar-Mejia, 915 F.2d 1152 (7th Cir.1990) ("defendant may accept responsibility for his own acts without helping the government to convict others"). Bond's reliance on Escobar is misplaced. In that case, the court declined to grant the adjustment solely because the defendant refused to tell the court anything about his sources or accomplices. Id. at 1152-53. Here the court considered a number of factors that appear in the Application Notes of § 3E1.1 before arriving at its determination. Bond had been arrested and thus did not voluntarily withdraw his criminal activities. The judge made a credibility determination that Bond's letter was not "from the heart" nor a timely effort to share information regarding Bond's involvement in the offense and related conduct. Thus, the sentencing judge's determination that Bond had not met his burden in demonstrating that he accepted responsibility for his criminal conduct was not clearly erroneous.
 
 III. CONCLUSION
 
 15
 For all of the above reasons, the sentence is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Section 3B1.1(c) provides for a two-level increase based on the defendant's role in the offense if he was "an organizer, leader, manager, or supervisor" in any criminal activity that involved fewer than five people