36 F.3d 1099
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony E. CORLEY, Defendant-Appellant.
 No. 94-1297.
 United States Court of Appeals, Seventh Circuit.
 Argued June 3, 1994.
Decided Oct. 3, 1994.
 
 1
 Before CUDAHY and MANION, Circuit Judges, and GORDON, District Judge.*
 
 ORDER
 
 2
 The government charged Anthony E. Corley with four counts of bank fraud, and one count of conspiracy to commit bank fraud. He pleaded guilty to one count of bank fraud, and the government dropped the other counts. At sentencing, the court increased his offense level two points for his role in the offense, and another two points for obstruction of justice. The court refused to grant him a two-level reduction for acceptance of responsibility. Corley appeals the sentencing decisions and we affirm.
 
 I. Facts
 
 3
 In early 1992, Corley allegedly obtained several stolen money orders. He devised a scheme with Tonya Padgett and Deanna Higgins to defraud several Chicago area banks using the money orders. They allegedly set up accounts under assumed names in at least four banks. They deposited stolen money orders in each account to inflate the balance. Before the banks could figure out that the money orders had been stolen, Corley and his accomplices withdrew large amounts from the accounts.
 
 
 4
 The government indicted Corley on June 16, 1993, and issued a superseding indictment on August 18, 1993. The superseding indictment charged one count of conspiracy to commit bank fraud, and four counts of bank fraud. The district court scheduled trial to begin on October 4, 1993. Before the trial started, one of Corley's co-conspirators, Tonya Padgett, pleaded guilty and agreed to testify for the government. Corley found out about this plea and failed to appear for trial. The district court dismissed the witnesses and potential jurors who had shown up for the start of trial, and issued a warrant for Corley's arrest. After hearing that an arrest warrant had been issued, Corley surrendered.
 
 
 5
 Unwilling to chance a trial against the testimony of his co-conspirator, Corley decided to cooperate. He entered a guilty plea in which he recounted his crimes in great detail. Significantly, he admitted in the plea that Tonya Padgett opened the bank accounts under false names "at my direction and to my knowledge." The guilty plea, which Corley and the Assistant United States Attorney prosecuting the case both signed, also provided:
 
 
 6
 f) In furtherance of my plea of guilty, the United States of America agrees with me that I have accepted responsibility for the commission of the crime to which I am pleading guilty; however, I understand that the Court may find that I have not accepted responsibility for the commission of the crime to which I am pleading guilty and the validity of this plea agreement is not contingent upon the Court's concurrence with my agreement with the United States that I have accepted responsibility;
 
 
 7
 Before sentencing, the Probation Office submitted a Presentence Investigation report (PSI) which recommended two-level increases in Corley's base offense level for his supervisory role in the offense and his obstruction of justice. The PSI concluded that Corley was a supervisor in the criminal activities because he "supplied the money orders and directed the scheme." The PSI concluded that Corley obstructed justice because he "willfully failed to appear as ordered for jury trial scheduled for October 4, 1993." Also, the PSI recommended that Corley receive no reduction in his sentence for acceptance of responsibility, because he "did not timely notify authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently."
 
 
 8
 At sentencing, Corley objected to the PSI's conclusions about his role in the offense, acceptance of responsibility, and obstruction of justice. The district court then held an evidentiary hearing to resolve Corley's claims. At the hearing, the government rested on the facts spelled out in Corley's guilty plea. Corley submitted one piece of evidence: a letter from his attorney to his probation officer which states in part that "Anthony Corley accepts responsibility for his criminal acts." After commenting upon the evidence, the court sentenced Corley. The court gave him a two-level increase for his supervisory role in the offense under Guidelines Section 3B1.1(c); a two-point enhancement for his obstruction of justice under Guidelines Section 3C1.1; and refused to give him any reduction for acceptance of responsibility under Guidelines Section 3E1.1. Corley appeals those decision. We shall consider each sentencing issue in turn.
 
 II. Analysis
 A. Acceptance of Responsibility
 
 9
 At the sentencing hearing, Corley had the burden to prove that he was entitled to a reduction in his offense level based on his acceptance of responsibility. United States v. Camargo, 908 F.2d 179, 185 (7th Cir.1990). He attempted to carry this burden by submitting a letter from his lawyer to his probation officer indicating that he accepted responsibility for the crimes. This letter had not convinced the probation officer; after receiving this letter the probation officer had concluded in the PSI that Corley did not accept the responsibility because he "did not timely notify authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently." The court agreed with the probation officer, and adopted the PSI's conclusion.
 
 
 10
 Basically the court found, after hearing Corley on the matter, that he did not adequately accept responsibility for his crimes as required by U.S.S.G. Sec. 3E1.1. This was fundamentally a factual findings; we will not disturb a district court's factual finding about a defendant's acceptance of responsibility unless the finding is clearly erroneous. United States v. Yanez, 985 F.2d 371, 374 (7th Cir.1993); United States v. Osborne, 931 F.2d 1139, 1154 (7th Cir.1991). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985). The degree of deference we give to a trial court's factual findings is especially appropriate where defendant's acceptance of responsibility is at issue; the sentencing court is in a unique position to evaluate a defendant's remorse. Camargo, 908 F.2d at 185.
 
 
 11
 We are not left with a "definite and firm conviction" that the district court erred in finding that Corley did not adequately accept responsibility. To the contrary, virtually every fact--except Corley's self-serving assertions made in contemplation of sentencing--indicate that he did not accept responsibility. His compunction was late; he did not plead guilty until his co-conspirator first pleaded and was scheduled to testify against him. Before that, he was ready to hold the government to its burden at trial. On the morning of trial, when the weight of the government's case finally appeared overwhelming, he still did not bow to the inevitable. Instead, he failed to show up for trial. Only when the court issued a warrant for his arrest did he finally surrender and plead guilty. Under these circumstances, we will not say that the district court erred in refusing to give him the sentencing break which the Guidelines allow for repentant criminals.
 
 B. Obstruction of Justice
 
 12
 A sentencing court's determination that a defendant obstructed justice is a factual finding which we review under the clearly erroneous standard. United States v. Delgado, 936 F.2d 303, 306 (7th Cir.1991); United States v. Brown, 900 F.2d 1098, 1103 (7th Cir.1990). Under the application notes which go with Section 3C1.1 of the Guidelines, a defendant is subject to an obstruction enhancement for willfully failing to appear for a judicial proceeding. U.S.S.G. Sec. 3C1.1, Note 3(e).
 
 
 13
 The district court adopted the finding in the PSI that Corley obstructed justice by failing to appear for his scheduled trial. There is no doubt that failure to appear is exactly the kind of behavior the obstruction enhancement is meant to address; the application note so provides. U.S.S.G. Sec. 3C1.1, Note 3(e). Corley makes the argument that nothing in the record indicates that his absence was willful. But he never attempted to argue at his sentencing that his absence was not willful. Nor does he provide any excuse for his absence in his briefs to this court. Again, we are not "left with a definite and firm conviction that a mistake has been committed." Anderson, 470 U.S. at 573. To the contrary, it is undeniable that the Guidelines allow an obstruction enhancement for failure to appear for trial, and undisputed that Corley did not appear. We defer to the district court's decision to enhance his sentence accordingly.
 
 C. Role in the Offense
 
 14
 The district court gave Corley a two-point enhancement under Guidelines Sec. 3B1.1(c), for his supervisory role in the bank fraud. The court adopted the conclusion in the PSI that "the defendant supplied the money orders and directed the scheme." Again, the district court's determination of Corley's role in the offense is a factual finding subject to the clearly erroneous standard. United States v. McKenzie, 922 F.2d 1323, 1329 (7th Cir.1991); United States v. Herrera, 878 F.2d 997, 1000 (7th Cir.1989).
 
 
 15
 In determining the role in the offense, two of the factors a court should consider are the defendant's decision making authority and his control and authority exercised over others. U.S.S.G. Sec. 3B1.1, Note 4; United States v. Brown, 944 F.2d 1377, 1380 (7th Cir.1991). Here, the government rested on one piece of evidence to demonstrate these factors: Corley's guilty plea. Indeed, in his guilty plea Corley admitted that "Tonya Padgett fraudulently represented herself, both at my direction and to my knowledge," in order to set up the phantom bank accounts to facilitate the bank fraud. Corley's admission that he directed Tonya Padgett in this endeavor is enough to support the district court's conclusion that he had a supervisory role in the offense. The court did not clearly err.[1]
 
 III. Conclusion
 For the foregoing reasons, we
 
 16
 AFFIRM.
 
 
 
 *
 Hon. Myron L. Gordon, District Judge from the Eastern District of Wisconsin, is sitting by designation
 
 
 [1]
 Corley argues in this appeal that the district court impermissibly relied on the PSI to reach this conclusion. But the sentencing transcript belies this assertion. The government rested on the guilty plea, and Corley's admission in the guilty plea was enough, in itself, to support the court's verdict