NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0633n.06
Filed: August 29, 2007

No. 05-5371

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| **JESUS ANTONIO ZAZUETA-GARCIA,** | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant.* | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**BEFORE: BOGGS, Chief Judge; MARTIN, Circuit Judge; and OLIVER, District Judge.**[*]

**SOLOMON OLIVER, JR., District Judge.** Defendant Jesus Antonio Zazueta-Garcia

("Garcia") pleaded guilty to a Superseding Indictment, charging him in two counts for conspiracy

to possess with intent to distribute marijuana and possessing with intent to distribute marijuana. On

appeal, Garcia argues that the district court improperly calculated the advisory guideline range when

it found that a four-level, rather than a two-level, enhancement applied for his role in the crime to

which he pleaded guilty. He also argues that his sentence is unreasonable under *United States v.*

_____

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District
of Ohio, sitting by designation.

*Booker*, 543 U.S. 220 (2005).  For the reasons stated below, we **AFFIRM** the judgment of the

district court.

## I.  BACKGROUND

Garcia agreed that the information in the counts of the Superseding Indictment to which he

pleaded guilty would serve as a factual basis for his plea.  (Joint Appendix ("JA") 51.)  Those facts

are as follows:

Count 1

From 1998 until January 31, 2003, Jesus Antonio Zazueta-Garcia, hereafter referred to as Garcia, and Carlos Daahir-Ingram, hereafter referred to as Ingram, caused to be delivered to multiple locations throughout the United States, over 10,000 kilograms of marijuana.  The marijuana was grown in Mexico and, through the use of couriers, transported in various land vehicles throughout the United States, including Kentucky, which served as a distribution point where marijuana was parceled out and sent on to other parts of the country.  The vehicles used to transport the marijuana included eighteen-wheel semi-tractor trailers, motor homes, U-haul trucks, pick-up trucks, and automobiles.  Some of the vehicles were modified to include hidden compartments used to secretly store the marijuana.

Blane Barksdale, a.k.a., Jeff Fehrenbach, has been a courier for Garcia since 1999.  Barksdale has made dozens of trips for Garcia since 1999.  Barksdale would receive a quantity of marijuana from Garcia and transport it to Ingram in various places, including locations in the mid-western and eastern United States.  One of Ingram's duties was to oversee the distribution of the marijuana to the customer after a courier had transported it across the Untied [sic] States.  Barksdale would also act as a go-between for Ingram and Garcia in the [sic] delivering the proceeds from the marijuana sales.  The amounts of cash Barksdale would deliver from Ingram to Garcia would range between from [sic] 10,000 to 1.8 million dollars.

Count 2

On or about and between January 23, 2003 and January 29, 2003, Garcia and Ingram caused to be transported to Campbellsville, Kentucky approximately 3,000 pounds of marijuana. On January 15, 2003, Blane Barksdale contacted Garcia asking for a shipment of marijuana to be sent to Kentucky. Garcia stated he would be sending approximately 1,500 pounds of marijuana in the shipment. Approximately three days prior to the marijuana arriving in Kentucky, Garcia contacted Barksdale saying he was sending approximately 2,000 pounds and he needed a place to store the marijuana. Barksdale agreed to do so.

On January 29, 2003, Barksdale directed Jesse Reid Morgan to rent a U-Haul truck to transport the marijuana to Campbellsville from Louisville. Morgan rented the U-Haul Truck in Elizabethtown, Kentucky. On Thursday, January 30, 2003, Barksdale remained in regular contact with Garcia and Ingram by telephone. Barksdale was directed to go to Allied Trucking Company off of Poplar Level Road to meet the truck with the shipment of marijuana. Garcia directed Barksdale to wait until Allied Trucking Company closed before off loading the marijuana into the U-Haul truck. Garcia also directed Barksdale to place $10,000 in the glove box of the U-Haul truck which was intended for the driver of the semi-tractor trailer. Barksdale gave the money to Morgan who placed it inside the glove compartment.

After off loading the marijuana to the U-Haul truck, which was approximately thirty boxes[,] Morgan drove the marijuana back to his residence at 235 Boston Road, Campbellsville, Kentucky. Once at the residence, Morgan, Melissa Durham, Barksdale, and Jeffrey Allen Laytart off-loaded the marijuana into the upstairs of the residence. Garcia and Ingram later went to the residence to count the quantity of the marijuana and also check for the quality of it. Garcia, Ingram, Laytart, and Barksdale all participated in this process. The distribution of the marijuana would be as follows. Approximately 600 to 1000 pounds was to go to Barksdale, 1000 pounds was to go to Chicago, and 600 pounds was to go to New York.

(JA 52-53.)

The presentence investigation report recommended, consistent with the parties' plea agreement, that the court find that Garcia was responsible for 25,000 pounds, or 11,340 kilograms, of marijuana, which results in a base offense level of 36. (JA 139.) The report also recommended that the court find that four additional levels be added because Garcia was the organizer and leader in the criminal activities to which he pleaded guilty. (*Id.*) Finally, the report recommended that he be given a three-level reduction for acceptance of responsibility, resulting in a total offense level of 37 (JA 139), before consideration of the government's anticipated substantial assistance motion, and that the court find that Garcia had one criminal history point, resulting in a criminal history category of I (JA 141).

The presentence investigation report discussed the Defendant's family background and history. The report indicated that he would not be able to pay a fine (JA 143), and that Garcia admitted to drug use up until the time of his arrest for the crimes to which he pleaded guilty in this case (JA 142). The presentence investigation report also discussed the relative culpability of the other defendants in the case, including co-conspirator Ingram, indicating that he and Garcia were essentially "partners" in the distribution process; however, each had his own independent supplier for marijuana. (JA 136.) The report concluded that, "[a]s it is unclear as to when Ingram-Daahir entered the conspiracy, he is being held accountable for distribution of approximately 15,000 pounds of marijuana." (JA 137.)

At sentencing, Garcia and the United States disagreed as to whether a four-level enhancement or a two-level enhancement under U.S.S.G. § 3D1.1 was proper based on Garcia's role in the crimes.

The court found that a four-level enhancement was appropriate. The court also granted the motion of the United States for a downward departure pursuant to U.S.S.G. § 5K1.1 for substantial assistance. Thereafter, counsel for the United States recommended that Garcia be sentenced to 151 months, the low end of the Guideline range for offense level 34 and criminal history category of I. Garcia's counsel argued for a sentence below the Guideline range. After hearing arguments from counsel for the United States and counsel for Defendant, the court announced a sentence of 151 months of custody, a sentence at the low end of the Guideline range, followed by five years of supervised release.

## II.  SENTENCING ENHANCEMENT

### A. Standard of Review

In *United States v. McDaniel*, 398 F.3d 540, 551 n.10 (6th Cir. 2005), we made the following observations:

> As we noted in *United States v. Henley*, 360 F.3d 509, 516 (6th Cir. 2004), "[t]he proper standard of review to employ in evaluating the district court's imposition of this enhancement is subject to some debate." Traditionally, when we reviewed a district court's imposition of a § 3B1.1 enhancement, we reviewed the district court's factual findings for clear error and its legal conclusions de novo. *See id.* In 2001, however, the Supreme Court ruled in *Buford v. United States* that, "in light of the fact-bound nature of the legal decision," an appellate court should review deferentially, rather than de novo, a district court's application of U.S.S.G. § 4B1.2. 532 U.S. 59, 66, 149 L. Ed. 2d 197, 121 S. Ct. 1276 (2001). We have previously found it unnecessary to determine whether *Buford* requires us to alter the standard of review we apply in reviewing § 3B1.1 enhancements because we would have affirmed the district court's sentencing determination under either standard, *see United States v. Swanberg*, 370 F.3d 622, 629 (6th Cir. 2004); *Henley*, 360 F.3d at

> 516, and we similarly find no need to resolve the question in this
> case, especially because we are merely providing advice to the district
> court to guide its sentencing determination on remand.

It is not necessary to resolve the question in this case either.

### B. The Enhancement

At sentencing, Garcia's counsel argued, "I submit to the court . . . it was an unorganized organization, Your Honor. And while there are many people, sometimes a person is a leader, sometimes they are not a leader. Sometimes they are a purchaser, sometimes they are a buyer." (JA 113-114.)

In finding that a four-level increase for Garcia's role in the offense was warranted, the court stated, "I'm going to deny your objection. I find that the defendant was an organizer and leader of criminal activity that involved five or more participants, and was otherwise extensive, and I think the four levels clearly applies in this case." (JA 114.)

Under U.S.S.G. § 3B1.1, the base offense level may be increased two to four levels based upon a finding regarding the defendant's role in the offense. Subsection (a) states: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." Subsection (c) states: "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels."

Garcia concedes that Subsection (c) is applicable and, thus, that at least a two-level enhancement was proper. Garcia argues essentially that the district court erred by making no

independent findings regarding Garcia's leadership role. The United States maintains that the district court did not need to make specific factual findings because the facts stated in the plea agreement support the four-level enhancement imposed by the court. It also argues that the statement made by the district court when announcing the four-level increase was a sufficient factual finding. The district court's findings in this area amount to one statement: "I'm going to deny your objection. I find that the defendant was an organizer and leader of criminal activity that involved five or more participants, and was otherwise extensive, and I think the four levels clearly applies in this case." (JA 114.) Although sparse, it appears that the district court found the four-level enhancement applicable based upon both factors mentioned in the Guidelines: (1) that the criminal enterprise involved five or more participants, and (2) that it was "otherwise extensive."

Application Note 3 to § 3B1.1 of the Guidelines states that: "In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." The First Circuit has held that "a determination that a criminal activity is 'extensive' within the meaning of section 3B1.1 derives from 'the totality of the circumstances, including not only the number of participants but also the width, breadth, scope, complexity, and duration of the scheme.'" *United States v. D'Andrea*, 107 F.3d 949, 957 (1st Cir. 1997) (quoting *United States v. Dietz*, 950 F.2d 50, 53 (1st Cir. 1991)) (brackets omitted). The Seventh Circuit has found criminal activity "extensive" where it "encompass[ed] several couriers, cross-country trips, and numerous drugs-for-money transactions. Some seven co-conspirators were

named in the indictment, but McKenzie undoubtedly was the linchpin of the operation. . . . [H]e ordered the couriers from the supply cities . . . to the destination cities located throughout the United States. He ordered payments and provided funds." *United States v. McKenzie*, 922 F.2d 1323, 1329 (7th Cir. 1991); *see also United States v. Mergerson*, 4 F.3d 337, 347-48 (5th Cir. 1993) (finding activity otherwise extensive where defendant controlled several distributors and was source of heroin, amount and value of heroin were extremely large, and heroin was high-purity).

The Guidelines do not define the terms "organizer" or "leader," but Application Note 4 lists several factors distinguishing organizers and leaders from others involved in the offense. These include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

Garcia relies primarily upon *United States v. Darwich*, 337 F.3d 645 (6th Cir. 2003). In *Darwich*, the district court did not make any findings on the leadership enhancement, and said only, "I'm denying the objections to that enhancement for the reasons stated by the United States Probation Department." *Id.* at 666. The defendant had objected to the enhancement and the matter was in controversy. On appeal, we looked to Federal Rule of Criminal Procedure 32(c)(1), and noted that the purpose of the rule is "to ensure that sentencing is based on reliable facts found by the court itself after deliberation" and, consequently, district courts cannot "summarily adopt the factual

findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence." *Id.* (quoting *United States v. Tarwater*, 308 F.3d 494, 518 (6th Cir. 2002)). Thus, "[b]ecause the matter of leadership role was disputed by Darwich in his objections to the PSR, the district court had an obligation under Rule 32(i)(3) to issue a ruling on the disputed matter unless the matter would not affect sentencing or would not be considered in sentencing." *Id.* at 667.

*Darwich* is distinguishable from this case. In *Darwich*, the district court made no factual findings and instead simply adopted the findings of the presentence investigation report. This court has held that "exclusive reliance on the PSR when a matter is in dispute cannot be considered a ruling." *Id.* (citing *United States v. Treadway*, 328 F.3d 878, 886 (6th Cir. 2003)). Here, however, the district court was able to rely upon facts admitted by the defendant. If the facts admitted by Garcia support the district court's finding, the court did not commit error.

Turning to those facts, Garcia admitted to "caus[ing] to be delivered to multiple locations" in the United States over 10,000 kilograms of marijuana that was grown in Mexico. (JA 52.) Consequently, the criminal activity covered two countries and the amount of marijuana involved was large. Garcia admitted to using couriers to transport drugs to Kentucky, which served as a distribution point, to be parceled out to other parts of the country. Eighteen-wheel semi-tractor trailers, motor homes, U-Haul trucks, and other vehicles were used. Garcia admitted that he was involved in directing this process from 1998 to 2003. His couriers would deliver cash payments to him ranging from $10,000 to $1.8 million. Count 2 of the indictment specifically references Garcia, Ingram, Barksdale, Jessie Reid Morgan, an unnamed truck driver, Melissa Durham, and Jeffrey Allen

Laytart. That amounts to at least seven persons involved in the criminal activity. As such, under the totality of circumstances, the criminal activity was "otherwise excessive" under any definition. Thus, the district court's application of the four-level enhancement when calculating the advisory guideline range was not erroneous.

## III. REASONABLENESS REVIEW[1]

### A. Governing Standards

Now that the Sentencing Guidelines are no longer mandatory pursuant to *Booker*, the Supreme Court has declared that the district court is bound by the mandate in 18 U.S.C. 3553(a) in determining the length of the appropriate sentence for a defendant. Section 3553(a) instructs district courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [the provision]." Specifically, Section 3553(a) mandates that the district court consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) [the appropriate advisory guideline range];
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . ;

---

[1] The United States argues that we may not review Garcia's sentence because the district court has complete discretion in determining the extent of a downward departure for substantial assistance. Garcia has, however, clearly challenged the reasonableness of his sentence, which *Booker* requires this court to review. *See generally United States v. McBride*, 434 F.3d 470 (6th Cir. 2006).

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

Once a district court imposes a sentence under Section 3553(a), this court must then consider whether the district court's sentence is a reasonable application of Section 3553(a). *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005) (noting that "when a defendant challenges a district court's sentencing determination, we are instructed to determine 'whether [the] sentence is unreasonable'") (quoting *United States v. Booker*, 543 U.S. at 261).

*Webb* was our first case after *Booker* to address the parameters of reasonableness review under *Booker*. In *Webb*, we concluded that reasonableness refers both to the substance of the district court's decision and the procedure employed by the district court in reaching that decision. 403 F.3d at 383. Therefore, a sentence by a district court that failed to properly consider a relevant factor listed in Section 3553(a) would be unreasonable. *Id.*

In *United States v. Williams*, 436 F.3d 706 (6th Cir. 2006), this court confirmed that under Section 3553(a), the advisory guidelines are but one of many sentencing factors to be considered, while the *Williams* court "join[ed] several sister circuits in crediting sentences properly calculated under the Guidelines with a rebuttable presumption of reasonableness." *Williams*, 436 F.3d at 708; *see United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) (recognizing a presumption of reasonableness); *United States v. Lincoln*, 413 F.3d 716, 717 (8th Cir. 2005) (same). In *Williams,* we further noted that while the district court must consider the list of sentencing factors articulated

in Section 3553(a), this court does not require "the 'ritual incantation' of the factors to affirm a

sentence." *Id.* at 709 (quotation omitted).

In *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006), we clarified *Williams*, stating

that "*Williams* does not mean that a Guidelines sentence will be found reasonable in the absence of

evidence in the record that the district court considered all of the relevant section 3553(a) factors."

In fact, *Foreman* noted that

> [a] sentence within the Guidelines carries with it no implication that
> the district court considered the [other] 3553(a) factors if it is not
> clear from the record. . . . Moreover, *Williams* does not mean that a
> sentence within the Guidelines is reasonable if there is no evidence
> that the district court followed its statutory mandate to "impose a
> sentence sufficient, but not greater than necessary" to comply with
> the purposes of sentencing in section 3553(a)(2). Nor is it an excuse
> for an appellate court to abdicate any semblance of meaningful
> review.

*Id.*

In *United States v. Richardson*, 437 F.3d 550 (6th Cir. 2006), this court further clarified the

meaning of the presumptively reasonable holding in *Williams*, stating:

> This rebuttable presumption does not relieve the sentencing court of its obligation to
> explain to the parties and the reviewing court its reasons for imposing a particular
> sentence. Even when selecting a presumptively reasonable sentence within the
> Guidelines range, a district court must "articulate[] its reasoning sufficiently to
> permit reasonable appellate review, specifying its reasons for selecting" the specific
> sentence within that range. A district court "need not recite these [§ 3553(a)] factors
> but must articulate its reasoning in deciding to impose a sentence in order to allow
> for reasonable appellate review." *United States v. Kirby*, 418 F.3d 621, 626 (6th Cir.
> 2005). We emphasize the obligation of the district court in each case to
> communicate clearly its rationale for imposing the specific sentence. Where a
> defendant raises a particular argument in seeking a lower sentence, the record must
> reflect both that the district judge considered the defendant's argument and that the

judge explained the basis for rejecting it. This assures not only that the defendant can understand the basis for the particular sentence but also that the reviewing court can intelligently determine whether the specific sentence is indeed reasonable.

*Id.* at 554 (internal citation omitted).

In *United States v. Vonner*, 452 F.3d 560 (2006), we found that the sentence imposed by the district court was unreasonable and remanded the case back to the district court for resentencing. In that case, the district court made a reference to the factors listed in 18 U.S.C. § 3553(a) in imposing a Guideline sentence, but gave no explicit indication that it had considered the extensive arguments and evidence presented on behalf of Defendant for a sentence below the Guideline range. *Id.* at 568-69. In indicating that a district court must state the reasons for its sentence, this court noted:

> This requirement is of even greater importance where the defendant has raised a specific claim as to why a lower sentence ought to be imposed. . . . [T]he record must simply be sufficiently clear to allow us to be assured that the district court considered all the arguments before it and to understand how those arguments factored into the district court's ultimate sentencing determination. This is required even where the district court's sentence of a defendant is presumptively reasonable under *Williams*.

452 F.3d 560 at 567-78. We note that this court vacated *Vonner* and ordered a rehearing en banc. *United States v. Vonner*, No. 05-5295, U.S. App. LEXIS 27661 (6th Cir. Oct. 12, 2006). Since that time, the Supreme Court has addressed sentencing requirements under Section 3553(a). In *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007), the Court confirmed that sentences within the Guideline range are accorded a rebuttable presumption of reasonableness on appellate review.

The *Rita* Court further held that no strict requirements exist regarding how long or detailed

a district court's rationale for imposing a specific sentence should be. The Court stated:

> The statute does call for the judge to "state" his "reasons." And that requirement reflects sound judicial practice. Judicial decisions are reasoned decisions. Confidence in a judge's use of reason underlies the public's trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates that trust.
>
> That said, we cannot read the statute (or our precedent) as insisting upon a full opinion in every case. The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances. Sometimes a judicial opinion responds to every argument; sometimes it does not; sometimes a judge simply writes the word "granted," or "denied" on the face of a motion while relying upon context and the parties' prior arguments to make the reasons clear. The law leaves much, in this respect, to the judge's own professional judgment.
>
> . . . . The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority. Nonetheless, when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation. Circumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical. Unless a party contests the Guidelines sentence generally under § 3553(a) – that is argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way – or argues for departure, the judge normally need say no more. . . .
>
> Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence, however, the judge will normally go further and explain why he has rejected those arguments. Sometimes

> the circumstances will call for a brief explanation; sometimes they
> will call for a lengthier explanation.

*Id.* at 2468 (internal citations omitted). In *Rita*, the district court imposed a sentence at the lowest

end of the recommended Guideline range. After hearing the parties' arguments, in particular the

defendant's argument that he should receive a sentence below the Guideline range, the district judge

stated that he was

> "unable to find that the [report's recommended] sentencing guideline
> range . . . is an inappropriate guideline range for that, and under 3553
> . . . the public needs to be protected if it is true, and I must accept as
> true the jury verdict." The court concluded: "So the Court finds that
> it is appropriate to enter" a sentence at the bottom of the Guidelines
> range, namely a sentence of imprisonment "for a period of 33
> months."

(*Id.* at 2462) (brackets in original) (internal citations omitted). The Supreme Court found that the

district court's discussion, while brief, was sufficient to uphold the sentence as reasonable, finding

that "where a matter is as conceptually simple as in the case at hand and the record makes clear that

the sentencing judge considered the evidence and arguments, we do not believe that the law requires

the judge to write more extensively." *Id.* at 2469.

## B. Garcia's Sentence

At sentencing, the Assistant United States Attorney, while acknowledging that the Guideline

range was advisory, stated that the court "should pay consideration to the guidelines in this case to

avoid disparity in sentencing. The Court has taken into account such things as – as the United States

motion for a 5K downward departure in arriving at the appropriate guideline range. So that's why

we would encourage the Court to sentence at the bottom . . . of that particular range and not go below that range." (JA 118.)  Garcia's counsel argued that:

> since the plea agreement there have been other mitigating circumstances which I believe would cause for a lower sentence than the  guideline range.  And I believe the Court has heard all those reasons before, and there is no sense going into them again. . . . I believe that all of the information contained within the sentencing memorandum, the – the items which were discussed earlier, call for a sentence in mitigation of the range requested in the guidelines.

(JA 118-19.)  The Sentencing Memorandum to which Garcia's counsel referred consisted of 1-1/4 pages plus a certificate of service and 34 pages of attachments.  (JA 62-98.)  The Memorandum summarized the kind of documentation which was attached.  Included were documents affirming that he has no criminal record in Mexico, his place of residence in Mexico and 16 pages of letters written on behalf of Garcia, including English translations for each letter.  Also included were Garcia's college graduation certificate, his first communion paper, and several certificates that he received while incarcerated in the Grayson County Jail.  Those certificates were awarded, among other things, for using his Spanish skills to help tutor inmates seeking a GED certificate for whom English was a second language and for classes he took at the jail while incarcerated, including a course with Alcoholics Anonymous.  The Memorandum further indicated that he was married and had four children.  Several of the attached items were photographs of Garcia interacting with various members of his family, including his children.

After hearing from counsel, the court announced the following sentence:

> Court will now state the sentence.  Court having granted the government's motion for 5K1.1 and 18, United States Code, 3553

> departure, and having considered the guidelines in 18, United States Code, 3553(a) imposes the final sentence. It's the judgment of the Court the defendant is committed to the custody of Bureau of Prisons for a term of 151 months as to each of counts 1 and 2 in the superseding indictment, which shall be served concurrently for a total term of 151 months imprisonment.

> . . . .

> [The] Court having granted the 5K1.1 and 18, United States Code, 3553(e) motion, and having considered 18, United States Code, 3553(a), and the advisory guidelines, which produce now a total offense level of 34, criminal history category I, the advisory guideline ranges are 151 months to 188 months . . . defendant has a relatively minor criminal history, and given the facts of the case the Court believes that the reasonable sentence of 151 months custody, followed by five years supervised release is reasonable and proper. The sentence is sufficient to meet the sentencing objectives of punishment, incapacitation and general deterrence, and satisfies the statutory provisions.

(JA 119-120.)

The court also, as part of its sentence, ordered drug aftercare as a condition of Defendant's supervised release (JA 120), that Defendant not pay a fine because of a lack of financial resources (*id*.), and that Defendant be housed in the Tucson area in a facility close to his family (JA 121).

We begin by noting that the imposition of sentence by the district judge in this case was clearly not a model pronouncement. *Compare United States v. Morris*, 448 F.3d 929, 934 (6th Cir. 2006) (Martin J., concurring) (stating that the hearing was "excellent" and that "[i]f district courts were to follow Judge Enslen's example in this case, reversals would be exceedingly rare"). On the other hand, this case is not analogous to the circumstances in *Johnson v. United States*, 467 F.3d 559 (6th Cir. 2006), where we held that a district court sentence was not procedurally reasonable because

the court, while expressly acknowledging during sentencing that the Guidelines were advisory, only referred to the appropriateness of the sentence under the Guidelines, and did not state that it was considering any of the other factors under 18 U.S.C. § 3553(a). *Id.* at 563.[2]

A review of the district court's sentence in the instant case reveals that the court found that a sentence at the low end of the Guideline range of 151 months was appropriate, at least partly because of the fact that it had already granted the government's motion for a downward departure. The court further noted that because of Defendant's minor criminal history, and the facts of the case, the sentence was appropriate. The court then stated that "[t]he sentence is sufficient to meet the sentencing objectives of punishment, incapacitation and general deterrence . . . ." (JA 120.) After the sentence, Defendant's counsel indicated that he had no objections to the sentence that he had not previously raised.

As discussed earlier herein, counsel for Defendant had only spoken briefly at sentencing regarding other mitigating factors that could serve as a basis for a lower sentence. He mainly referred to his Sentencing Memorandum, which provided general background and family information regarding the Defendant. There were no specific and focused arguments made, as in *Rita*, for a sentence lower than the Guideline range. In *Rita*, the Defendant argued for a downward departure and/or for leniency based on "three sets of special circumstances: health, fear of retaliation in prison, and military record." 127 S. Ct. at 2469. The Court affirmed the sentence, finding that:

---

[2]We need not determine today whether *Johnson* survives *Rita*. *See United States v. Robinson*, 2007 U.S. App. LEXIS 17952, at *13-*14 (6th Cir. 2007).

> We acknowledge that the judge might have said more. He might have added explicitly that he had heard and considered the evidence and argument; that (as no one before him denied) he thought the Commission in the Guidelines had determined a sentence that was proper in the minerun of roughly similar perjury cases; and that he found that Rita's personal circumstances here were simply not different enough to warrant a different sentence. But context and the record make clear that this, or similar, reasoning, underlies the judge's conclusion. Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively.

*Id.* Thus, the fact that the Supreme Court found that the district judge's brief discussion in *Rita* was sufficient, even in light of the defendant's specific objections to his sentence, strongly supports our finding that the district judge's discussion was sufficient in the instant case, where no specific arguments were raised. Thus, it cannot be said that the court failed to address a particular argument raised by Defendant in seeking a lower sentence. Here, the background and family information presented was of the same type as that contained in the presentence investigation report. Indeed, there was nothing raised in Defendant's Sentencing Memorandum regarding a possible sentencing disparity between Garcia and any of his co-Defendants, and there was nothing in the presentence investigation report suggesting that sentencing disparity was a § 3553(a) factor that the court needed to explicitly address. To the contrary, the presentence investigation report found that Garcia's co-Defendant Ingram was responsible for 15,000 pounds of marijuana, whereas Garcia was responsible for 25,000 pounds (to which Garcia admitted in his plea agreement). Garcia's counsel did not raise any arguments regarding disparity at the sentencing hearing and he did not object to the sentence on this ground when given an opportunity by the judge to do so after the sentence was pronounced. In

light of these facts, we find that Garcia's argument on appeal that the district court should have addressed a possible sentencing disparity between his sentence and that of co-Defendant Ingram is unavailing. We further find that upon consideration of the particular facts in this case, the district court articulated its reasons in a manner sufficient to permit reasonable appellate review. The district court addressed the relevant § 3553(a) factors. Furthermore, Defendant did not raise specific arguments for a lower sentence as in *Rita*. Consequently, there is nothing in the record indicating that the sentence was unreasonable.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.