**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0152n.06

Case No. 18-3476

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) | **FILED** |
| | ) | Mar 28, 2019 |
| v. | ) | DEBORAH S. HUNT, Clerk |
| | ) | ON APPEAL FROM THE UNITED |
| E. STANLEY HOFF, | ) | STATES DISTRICT COURT FOR |
| Defendant - Appellant. | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |

**BEFORE: BOGGS, GIBBONS, and BUSH, Circuit Judges.**

**JOHN K. BUSH, Circuit Judge.** The First Amendment protects freedom of speech, among other guarantees, not threats of physical harm. One aspect of this case calls for interpreting the distinction between the two.

E. Stanley Hoff pled guilty to one count of threatening to assault or murder a United States official, in violation of 18 U.S.C. § 115, for leaving a threatening voicemail at the office of a member of Congress. Hoff argues that (1) the district court erred by allegedly failing to rule on his motion to withdraw his guilty plea, (2) he received ineffective assistance of counsel because his counsel failed to obtain a ruling on the motion to withdraw Hoff's guilty plea, and (3) the district court imposed a procedurally and substantively unreasonable sentence. For the reasons that follow, we **AFFIRM**.

**BACKGROUND**

In February and March of 2017, Hoff left three voice messages at the Hillard, Ohio office of United States Representative Steve Stivers that gave the Congressman concern for the safety of himself and his family. Congressman Stivers contacted the Capitol Police to investigate these calls. During the Capitol Police investigation, an investigating agent (Agent Andriko) warned Hoff not to contact Congressman Stivers's office again. Nevertheless, Hoff left two additional voice messages on April 30, 2017, and June 18, 2017.

The latter message was left just four days after a shooting at a baseball practice in Washington D.C. where Republican congressmen and their staffs were fired upon. In that message, Hoff referenced the baseball practice shooting: "I've seen the [] prayer y'all were saying at the baseball diamond last night. I think y'all better hit your knees and pray for the people that you're screwin up their lives with your secret legislation . . . ." R. 47-1, PageID 274–75. Hoff continued: "We are taking our country back. We are on the march. The other day is the tip of the iceberg. I've tried to warn you . . . . Maybe the next one taken down will be your daughter, huh? Or even your wife. Or even you." *Id.* at 275.

After the Capitol Police determined the caller's identity—Hoff had blocked his number— the Capitol Police obtained a warrant for his arrest. Following Hoff's arrest, a grand jury in the Southern District of Ohio indicted him on one count of threatening to assault and murder a United States official and threatening to assault and murder a member of the immediate family of a United States official, in violation of 18 U.S.C. § 115(a)(1)(A), (a)(1)(B), and (b)(4).

After a mental-health evaluation and a denied motion for bond, Hoff entered into a plea agreement on October 24, 2017. Pursuant to that agreement, Hoff pled guilty to leaving "a voice mail at the Hilliard, Ohio, office of United States Representative Steve Stivers (OH-15)," in

violation of 18 U.S.C. § 115. R. 27, PageID 79. Hoff also acknowledged that he had made his calls to Congressman Stivers "because of Representative Stivers['s] official duties." *Id.* The district court accepted Hoff's guilty plea on October 24, 2017.

On January 11, 2018, approximately three months after the district court accepted Hoff's guilty plea, Hoff moved to withdraw his counsel. The motion stated that Hoff no longer wanted to work with his present counsel and was "adamant that he wants to withdraw his guilty plea and communicated his decision to do so on or about December 12, 2017." R. 35, PageID 136. In response to the motion, the district court held a status conference on January 30, 2018.

During the status conference, the district judge questioned defense counsel about Hoff's motion to withdraw. Hoff's counsel explained that "Mr. Hoff has indicated that he is resolute in his decision to move to withdraw his plea." R. 54, PageID 297. The district judge responded, "I'm resolute in my decision to deny that[,]" but was "willing to hear what [Hoff has] to say" on the matter. *Id.* In the colloquy that followed, Hoff explained to the district judge that had suffered from an onset of depression and was suicidal at the time and of the guilty plea and now wished to withdraw it. Based on Hoff's explanations, the district judge decided to "re-refer" Hoff to a psychiatrist "for an updated evaluation to determine whether or not the situation has changed with [Hoff's] mental health post-plea so that [the court] can either grant [his] motion or deny the motion with the most up-to-date information that we have." *Id.* at 305. After reaching this conclusion, the district court granted Hoff's motion to withdraw his counsel and in turn, appointed new counsel for him. The district judge also told Hoff the following: "You have orally indicated that you wish to withdraw your plea. You may want to discuss that with new counsel before you file a formal motion, but I've heard what you've said today." *Id.* at 307.

Having secured new counsel, Hoff moved to extend the time to object to the initial presentence report. The motion made no mention of withdrawal of his guilty plea, nor did Hoff formally file a motion to withdraw his guilty plea before his sentencing. The district court granted Hoff's motion for extension of time, and on May 11, 2018, the district court sentenced Hoff to 40 months' imprisonment followed by three years of supervised release.

This timely appeal followed.[1]

## DISCUSSION

### I.

We first address Hoff's assertion that the district court erred in failing to rule on his motion to withdraw his guilty plea. Relying on Federal Rule of Appellate Procedure 27, Hoff asserts that the district court either did not rule upon or implicitly denied his oral motion to withdraw his guilty plea, which was raised during the January 30, 2018, status conference. Hoff contends that the district court's "implicit denial" is reversible error because he successfully demonstrated that he had "two very strong, fair and just reasons in the instant matter" to satisfy the withdrawal standard under Federal Rule of Criminal Procedure 11(d)(2)(B).

The district court's denial of a motion to withdraw a guilty plea is reviewed for abuse of discretion. *United States v. Hockenberry*, 730 F.3d 645, 661–62 (6th Cir. 2013); *accord United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008). Of course, this standard of review presupposes that the defendant has not waived or forfeited[2] his rights to challenge the district

---

[1] We note that after Hoff filed his notice of appeal, he also moved to request a decision on "Defendant's Prior Motion to Withdraw Plea." The district court denied the motion on two bases. First, the district court noted that during the status conference: "Defense counsel clarified that no motion to withdraw had yet been made but it was Defendant's intent *to make such a motion in the future*." R. 58, PageID 352 (emphasis added). Second, the district court concluded that it lacked jurisdiction to withdraw the plea because the district court had already sentenced the defendant. *Id.* at 352–53 (citing Fed. R. Crim. P. 11(e)).

[2] We are mindful that although the terms waiver and forfeiture are often used interchangeably, they have different meanings. "[F]orfeiture is the failure to make the timely assertion of a right[;] waiver is the 'intentional relinquishment

court's denial of his motion to withdraw a guilty plea. *See United States v. Denkins*, 367 F.3d 537, 543 (6th Cir. 2004). A defendant waives a particular challenge when he abandons it in the proceedings below. *See id.* at 544. When the defendant abandons (i.e., waives) his challenge, "that challenge is forever foreclosed, and cannot be resurrected on . . . appeal." *United States v. Saucedo*, 226 F.3d 782, 787 (6th Cir. 2000).

This case presents circumstances similar to those in *Denkins* and *United States v. Smith*, 608 F. App'x 395 (6th Cir. 2015) (per curiam), where this court held that each defendant abandoned his motion to withdraw his guilty plea. In *Denkins*, the defendant simultaneously moved for withdrawal of his guilty plea and for a competency evaluation, "with the former motion resting solely on the ground that Defendant lacked the mental competency to understand the nature of the proceedings or to knowingly, voluntarily, and intelligently enter a plea." 367 F.3d at 543. After the evaluation concluded that the defendant was competent, the defendant withdrew his objection to the presentence report and as a result, "the district court was never called upon to decide whether to permit Defendant to withdraw his plea on the ground of incompetency." *Id.* at 544. In those circumstances, this court concluded that the challenge was abandoned on appeal, as the district court had given the defendant an opportunity to explore the basis for his plea withdrawal and "surely would have been willing to revisit the issue." *Id.*

Likewise in *Smith*, this court concluded that the defendant abandoned his motion to withdraw his guilty plea. 608 F. App'x at 396. The defendant in *Smith* simultaneously moved to withdraw counsel and withdraw his guilty plea. *Id.* The district court granted the defendant's motion to withdraw counsel but denied the defendant's motion to withdraw his plea without prejudice. *Id.* Quoting the district court, this court noted that the district court denied the motion

---

or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

to withdraw the plea without prejudice because "[t]his will allow Defendant to consult with new counsel on the risks and benefits of proceedings with such a motion." *Id.* (internal quotation marks omitted). This court then concluded that the defendant's "failure to renew his motion and the factual concessions in his supplemental sentencing memorandum constituted an effective abandonment of his motion to withdraw his guilty plea." *Id.*

*Smith* and *Denkins* guide us to a similar conclusion here. Turning to this case, we discern no difference from our precedents that would warrant a different outcome. Hoff moved to withdraw his counsel when he moved to withdraw his guilty plea. Hoff's counsel explained that he had not formally filed a motion to withdraw the guilty plea. Instead, defense counsel explained that "the motion is a motion to withdraw as counsel on the basis being that [Hoff] intends to move forward with this motion to withdraw the plea. We have not made that motion [to withdraw the plea] because we didn't feel that we could given the conflicts that [the government] has already explained." R. 54, PageID 306. Just as in *Smith*, the district court here granted the motion to withdraw and informed Hoff that the court acknowledged his oral request to withdraw his plea and that Hoff "may want to discuss that with new counsel before [he] file[s] a formal motion" to withdraw his plea. *Id.* at 307; 608 F. App'x at 396.

From this colloquy, Hoff was on notice that the request for a plea withdrawal could be revisited so that the district court could "either grant [Hoff's] motion or deny the motion with the most up-to-date information that [the court has]." R. 54, PageID 305. And yet, even with this information, Hoff, like the defendants in *Denkins* and *Smith*, elected not to revisit this challenge prior to sentencing after presumably considering the matter with his new counsel. Moreover, we note that like the defendant in *Smith*, Hoff also conceded guilt in his sentencing memorandum when he stated that the fifth voice message qualified as a "threat" in violation of 18 U.S.C.

6

§ 115(a)(1)(A), (a)(1)(B), and (b)(4). Thus, we conclude Hoff waived his challenge to the district court's failure to allow withdrawal of the guilty plea.

## II.

We now turn to Hoff's argument that he was denied the right to effective assistance of counsel guaranteed by the Sixth Amendment. Specifically, Hoff contends that he "was denied his right to counsel on [the issue of the motion to withdraw his plea], where at his sentencing hearing, his newly appointed counsel . . . ignored the issue of the pending conclusion to Hoff's motion to withdraw his plea, and allowed Hoff to be sentenced prior to conclusion of the issue." Appellant Br. at 10.

"[O]rdinarily we will not review a claim of ineffective assistance of counsel on direct appeal because the record is usually insufficient to permit adequate review of such a claim. These claims are more properly raised in a postconviction proceeding . . . ." *United States v. Gardner*, 417 F.3d 541, 545 (6th Cir. 2005) (citations omitted); *see also United States v. Franklin*, 415 F.3d 537, 555–56 (6th Cir. 2005). Indeed, "[w]ithout a record, it is difficult for this court to determine whether [Hoff's] trial counsel was, in fact, ineffective." *United States v. Richardson*, 906 F.3d 417, 424 (6th Cir. 2018) (citing *United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005)). There is nothing in the record explaining whether Hoff and his trial counsel discussed pursuing the motion to withdraw his plea or whether Hoff decided to abandon the motion. In these circumstances, we therefore decline to rule on Hoff's ineffective assistance of counsel claim because it is not ripe. *See United States v. McCarty*, 628 F.3d 284, 296 (6th Cir. 2010) (holding ineffective-assistance claim not yet ripe for review because the "record does not explain why defense counsel did not ask for a continuance or what her strategy entailed regarding [defendant's] mental history or guilty plea").

III.

Lastly, we turn to Hoff's challenges to his sentence. He asserts that the sentence is both procedurally and substantively unreasonable.

A.     Procedural Reasonableness

Hoff maintains that the district court erred by imposing a procedurally unreasonable sentence because it incorrectly calculated the applicable advisory United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range for the underlying offense. According to Hoff, the district court erred in applying the enhancement under U.S.S.G. § 2A6.1(b)(2)(A) because the underlying conduct did not involve more than two threats and erred in applying the enhancement under U.S.S.G. § 3A1.2(b) because his conduct was not motivated by Congressman Stivers's status as a government official.

Because Hoff preserved his sentencing objections below, we review "the district court's legal conclusions regarding the application of the Sentencing Guidelines *de novo*, and . . . the district court's factual findings for clear error." *United States v. Newell*, 309 F.3d 396, 400 (6th Cir. 2002) (citing *United States v. Taylor*, 248 F.3d 506, 515 (6th Cir. 2001)). A district court imposes a procedurally unreasonable sentence, and thus abuses its discretion, when it "fail[s] to calculate (or improperly caculat[es]) the Guidelines Range, treat[s] the Guidelines as mandatory, fail[s] to consider the [18 U.S.C.] § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007); *accord United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007).

i.     More Than Two Threats (U.S.S.G. § 2A6.1(b)(2))

After reviewing the transcripts and recordings of Hoff's five voice messages, the district court concluded that the more-than-two-threats sentencing enhancement under U.S.S.G.

§ 2A6.1(b)(2)(A) applied to Hoff's underlying conduct because "any reasonable person would understand the intended threat in the multiple phone calls that are made." R. 55, PageID 320. The district court identified a threat in four of the five voice messages because a "reasonable person is going to feel threatened by the receipt of . . . voicemails like that." *Id.* at 319. Hoff argues that the district court erred in applying the more-than-two-threats enhancement because the threats needed to be viewed "in totality." Appellant Br. at 12. That is, according to Hoff, once the threats are viewed as a whole in conjunction with his interviews with the Capitol Police, the voice messages demonstrate that Hoff was not threatening Representative Stivers, but instead was advocating a peaceful resolution and did not intend to harm the Congressman. Neither the district court nor this court finds Hoff's argument persuasive.

Hoff has conceded that his last message contained a threat. Thus, for the enhancement to apply, we need only determine if at least two of the remaining four voice messages contain a "threat" for purposes of U.S.S.G. § 2A6.1(b)(2).

The Guidelines state, in relevant part: "If . . . the offense involved more than two threats . . . increase by 2 levels." U.S.S.G. § 2A6.1(b)(2). Neither the Guidelines nor the commentary provide a definition of "threat." *See United States v. Mitchell*, 59 F. App'x 701, 702 (6th Cir. 2003). Further, we have not previously defined "threat" for purposes of U.S.S.G. § 2A6.1(b)(2). Consistent with the Fourth Circuit's approach in *United States v. Spring*, we find that the meaning of "threat" as used in U.S.S.G. § 2A6.1(b)(2) is the same as statutes criminalizing threats (e.g., 18 U.S.C. § 875(c)). 305 F.3d 276, 280 (4th Cir. 2002) (applying § 2.A6.1(b)(2) to a conviction under 18 U.S.C. § 115); *see also United States v. Doggart*, 906 F.3d 506, 511 (6th Cir. 2018) (citing *Spring*'s analysis regarding the applicability of § 2.A6.1(b)(2) to conclude that a threat under 18 U.S.C. § 875(c) includes statements made to accomplices); *United States v. Frazer*,

391 F.3d 866, 870 (7th Cir. 2004) (citing with approval *Spring*'s conclusion that definition of threat for purposes of U.S.S.G. § 2A6.1(b)(2) is the same as the criminal codes). Because we have interpreted the word "threat" in 18 U.S.C. § 875(c), *Doggart*, 906 F.3d at 512, we will now apply its meaning to U.S.S.G. § 2A6.1(b)(2).

Under the definition from *Doggart*, a threat under 18 U.S.C. § 875(c) is a communication such "that a reasonable observer would understand the words . . . as a serious expression of an intent to harm." 906 F.3d at 512 (relying upon *Elonis v. United States*, 135 S. Ct. 2001 (2015)).[3] Thus, the relevant issue is whether a reasonable person would view at least two of Hoff's four voice messages as a serious expression of an intention to inflict bodily harm based on the particular message's content and the context in which it was delivered. *Doggart*, 906 F.3d at 511; *United States v. Andrews*, 48 F. App'x 151, 155 (6th Cir. 2002). This is a factual question that we review for clear error. *See United States v. Glover*, 846 F.2d 339, 344 (6th Cir. 1988); *see also United States v. Hankins*, 195 F. App'x 295, 300–01 (6th Cir. 2006); *Mitchell*, 59 F. App'x at 702.

In conducting our review, we are mindful that in this nation there is a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wideopen, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Watts v. United States*, 394 U.S. 705, 708 (1969) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). Honoring this commitment here requires delineation between protected speech—which can be "very crude offensive method[s] of

---

[3] In analyzing whether a defendant made more than two threats for purposes of determining whether the enhancement applies, courts need not inquire into the defendant's mens rea. *See United States v. Murphy*, 96 F.3d 846, 849 (6th Cir. 1996) (noting that this court does not infer mens rea requirement when interpreting the Guidelines); *United States Jordan*, 678 F. App'x 759, 774 (10th Cir. 2017) (holding U.S.S.G. § 2A6.1(b)(2)(A) does not have a mens rea requirement).

stating . . . political opposition" through language that is often "vituperative, abusive, and inexact"—and unprotected speech that amounts to a "true threat." *Id.* at 707, 708.

First, we consider the context in which these communications were delivered. All five of Hoff's voice messages were placed directly with Congressman Stivers's office. Unlike the statements that were made in *Watts* during a political rally that caused the audience to laugh, the serious statements made by Hoff were more direct and personal. *See id.*; *see also United States v. Bellrichard*, 994 F.2d 1318, 1321–22 (8th Cir. 1993) (noting that letters and postcards to home and work address would likely be viewed as a threat compared to the statements made in the large outdoor political rally in *Watts*). In these circumstances, after listening to the speaker's words, a reasonable person could conclude that the message was a threat and not political hyperbole. *Mitchell*, 59 F. App'x at 702 (affirming Guidelines enhancement to multiple threats made on telephone messages).

In addition to context, the content of the messages supports district court's finding of threats for purposes of applying the enhancement. On March 5, 2017, Hoff left the following voice message:

> Hey Stevie its Joe America Again. I'm sick and tired of seeing your baby rattle head on my TV lying to me. If you say you're working for me then you better get to work. I haven't seen you're a[**] or heard from your a[**]. You're hiding like the baby b[****] again which you Republicans are very well known for. Let me tell you something partner, if you sons of b[****] steal one more election from us then we are gonna go into peaceful takeover. In other words we're going to take our country and our government back. If you shoot down one of our troops and you will have the bloodiest massacre God's earth has ever seen. And the massacre will be on you and Trump and Conway and all that whole bunch of s[***] in the cesspool you've got. We're going to take care of it you see and we're going to take care of it our way and if you don't like it I suggest you move to North Korea or even go over to Russia with old Donny boy. He's got some friends over there maybe he can get you hooked up with one of them American b[*****] with one of them Russian whores. You understand what I'm saying dumbass? Get your f[*******] a[**] to work b[****]. Leave Obamacare alone or die.

R. 47-1, PageID 274. As the district court correctly noted, the threatening part of this message concerns the phrase "Leave Obamacare alone or die." Although these words may appear to be only vulgar on the sterile paper record before us, their threatening nature is revealed when the message is heard as delivered. Thus, the district court's finding that this message contained a threat is not clearly erroneous, as the audio recording demonstrates that Hoff meant to emphasize "or die" using an ominous and menacing tone. A reasonable person would interpret these statements delivered in their context as a serious expression of an intention to inflict bodily harm.

According to Hoff, a reasonable person would understand that the "Leave Obamacare alone or die" comment relates back to Hoff's belief that repealing Obamacare will trigger the "bloodiest massacre God's Earth has ever seen" and is not directed toward taking Congressman Stivers's life. But that interpretation is not the only conclusion that can be reached by this passage because a reasonable person could determine those words are a true threat. Therefore, the district court did not err in counting Hoff's March 5 voice message as one of the threats for applying the enhancement under U.S.S.G. § 2A6.1(b)(2).

> On March 23, Hoff left this voice message:
>
> Yeah Mr. Stiver's (*sic*) how's your family today? This is S.O.L. calling. If you're going to serve the people, do so. If you're going to serve the Republican party, go to North Korea, get the F[***] out of here. The issue at hand today you're going to be voting on a health care bill. If you go down with the s (*sic*), and that bill passes, I guarantee you my death will not be in vain. You want a more dangerous, hateful country to live in? We're going to give it to you. Thank you for this time and remember serve the people not the repugnant party and that jackass in the White House.

R. 47-1, PageID 274. The district court concluded that this message was a threat because of the phrase "You want a more dangerous, hateful country to live in, we're going to give it to you." R. 55, PageID 319. Hoff concedes that these words sound "threatening and foreboding" when heard in isolation. Appellant Br. at 15. Nonetheless, he asks us to conclude that that this message is not

a threat when read alongside his subsequent interview with Agent Andriko. Hoff's "context" argument fails from the outset. Although it is true that we are to view messages allegedly deemed as threats "in context," *see Doggart*, 906 F.3d at 511, that analysis does not include non-contemporaneous statements made by the defendant *after* the alleged threat. We have found no authority to support Hoff's argument that we may look to words, statements, or actions, delivered after the original message to determine whether the original message is a threat.

Moreover, in view of Hoff's acknowledgement that his March 23 voice message was threatening and foreboding, we discern no clear error in the district court's conclusion that this message contained a threat. We also note that Hoff mentioned Congressman Stivers's family for the first time in this call: "Yeah Mr. Stiver[s] how's your family today?" In view of Hoff's threatening tone and express reference to the Congressman's family (which he had not done previously) a reasonable person would understand this call as a serious expression of an intent to harm for this additional reason. Therefore, the district court did not commit clear error in counting Hoff's March 23 voice message as one of the threats for applying the enhancement under U.S.S.G. § 2A6.1(b)(2).

In view of Hoff's admission that the June 18 voice message was a threat and our conclusion that the district court did not clearly err in finding that March 5 and March 23 voice messages were threats, we hold that the district court did not err in applying the more-than-two-threats enhancement under U.S.S.G. § 2A6.1(b)(2).

ii.     Motivated by Status as Government Official (U.S.S.G. § 3A1.2)

Hoff maintains that his conduct was not motivated by Congressman Stivers's status as a government official. Instead, Hoff claims that his agitation and rationale for leaving the June 18 voice mail stems from Agent Andriko's investigation into his previous calls. Thus, according to

Hoff, his fifth voice message differs from his previous messages because "Hoff's last voicemail for Representative Stivers appears to focus and center on Hoff's anger over Agent Andriko's telephone interview."  Appellant Br. at 21.

The relevant provision of the Guidelines states:

(a) If (1) the victim was (A) a government officer or employee . . . or (C) a member of the immediate family of a person described in subdivision (A) []; and (2) the offense of conviction was motivated by such status, increase by 3 levels.

(b) If subsection (a)(1) and (2) apply, and the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person), increase by 6 levels.

U.S.S.G. § 3A1.2(a)–(b).  The comments in the Guidelines specify that "Motivated by such status" for purposes of subsections (a) and (b) "means that the offense of conviction was motivated by the fact that the victim was a government officer or employee, or a member of the immediate family thereof."  *Id.* § 3A1.2 cmt. 3.

The district court held this enhancement applied because "[t]he victim in the offense is a United States Congressman and his family" and Hoff "specifically targeted the victim because of his position in public office."  R. 55, PageID 326.  The district court reasoned that the call was motivated by Representative Stivers's status as a government employee "because of the tone and threats conveyed in that statement."  *Id.* at 325.

At the outset, we note that Hoff has not challenged that the Congressman qualifies as a "government officer or employee" for purposes of U.S.S.G. § 3A1.2, nor do we discern any plain error in the district court's holding.  Moreover, we discern no clear error in the district court's holding that Hoff's actions were motivated by Congressman Stivers's status as a government official.  *See United States v. Smith*, 463 F. App'x 564, 569–70 (6th Cir. 2012) (noting that defendant's motivation is a factual determination).  The record supports the district court's factual determination because Hoff admitted that his conduct was motivated by Stivers's duties.  *See*

14

*United States v. Zazueta-Garcia*, 239 F. App'x 941, 946 (6th Cir. 2007) ("If the facts admitted by [the defendant] support the district court's finding, the court did not commit error."). Hoff admitted in his guilty plea that he "made this phone call in violation of 18 U.S.C. [§] 115 to a U.S. Official because of Representative Stivers['s] official duties." R. 27, PageID 79.

The district court's conclusion is supported even without the benefit of Hoff's admission in the plea agreement. Beginning in February 2017, Hoff directed calls to Congressman Stivers's office because of official actions that either Stivers or his political party took at the time. *See* R. 47-1, PageID 274 ("You were elected to serve all the people."); *id.* ("Leave Obamacare alone or die."); *id.* ("If you go down with this s (*sic*), and that bill passes, I guarantee you my death will not be in vain."). As a member of Congress, Representative Stivers is called upon to vote on pending legislation, and thus it is clear that Hoff's statements were motivated by and directed toward the Congressman's status as a government official.

Further, those three calls were made before Hoff had any contact with Agent Andriko. Hoff's assertion that his fifth call was purely motivated by Agent Andriko is contradicted by the contents of his prior calls. Hoff was previously calling Congressman Stivers in response to actions associated with the Congressman's official duties. Agent Andriko's involvement only heightened Hoff's previous agitation. Agent Andriko was not the independent source of Hoff's motivation for the fifth voice message.

Even if we viewed Hoff's final voice mail in isolation, the district court's factual conclusion is still sound. It is true that Hoff references Agent Andriko in his call, but it also clear from the transcript of the call that the district court could fairly conclude that Hoff's actions were motivated by Stivers's status as a government conduct. Hoff stated, "I think y'all better hit your knees and pray for the people that you're screwing up their lives with your secret legislation that

you're tryin (*sic*) to run through everything." R. 47-1, PageID 274–75. He also remarked, "You are nothing more than a public servant. And that's what you gonna be. Ok? You are going to serve all of the public. Not just the repugnant public." *Id.* at 275. In view of these statements, we find no error in the district court's conclusion that the Guidelines enhancement under § 3A1.2 applies to Hoff's underlying conduct.

In view of the foregoing, we **AFFIRM** the district court's sentence as procedurally reasonable.

B.      Substantive Reasonableness

Unlike procedural objections, "defendants do not need to raise the claim of substantive unreasonableness before the district court to preserve the claim for appeal." *United States v. Penson*, 526 F.3d 331, 337 (6th Cir. 2008) (citing *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc)). "We review the substantive reasonableness of a sentence for abuse of discretion, even where the sentence imposed is greater than the guidelines range." *United States v. Robinson*, 813 F.3d 251, 264 (6th Cir. 2016) (citing *United States v. Smith*, 516 F.3d 473, 477–78 (6th Cir. 2008)). A sentence that is above the Guidelines range is not entitled to the presumption of reasonableness, "but neither is it presumptively un-reasonable." *Id.* (citing *United States v. Liou*, 491 F.3d 334, 337 (6th Cir. 2007)).

We consider a sentence to be substantively unreasonable "when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *Id.* (quoting *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)). In other words, substantive reasonableness focuses on whether "a sentence is too long (if a defendant appeals) or too short (if the government appeals)." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). And in

our review of the sentence, "we may take the degree of variance into account and consider the extent of the deviation from the Guidelines . . . [but we] must give due deference to the district court's decision that the § 3553(a) factors . . . justify the extent of the variance." *Robinson*, 813 F.3d at 264 (alteration in original) (quoting *Smith*, 516 F.3d at 477–78). Lastly, we note that when a defendant asks us to "balance the [§ 3553(a)] factors *differently* than the district court did," such a request "is simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence." *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006); *accord United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008).

Hoff asserts that his sentence was substantively unreasonable because his sentence of 40 months' imprisonment deviated from the Guidelines range of 24–30 months' imprisonment. According to Hoff, the district court imposed a substantively unreasonable sentence because it is not consistent with the mandate in 18 U.S.C. § 3553(a)(2), as the district court did not account for Hoff's life expectancy, lack of financial assets, that the speech at issue is borderline protected by the First Amendment, and the facts of this case present a "less serious" offense.

Hoff's sentence is an above-guidelines sentence, so we do not give it a presumption of reasonableness. Nevertheless, Hoff asks us for relief that we cannot provide because his challenge requires us to revisit factors weighed and balanced by the district court. Furthermore, contrary to Hoff's arguments, the district court took Hoff's life expectancy and personal situation into account when it imposed Hoff's sentence.

Hoff also fails to acknowledge that the district court's 10-month upward variance is justified based on the record in light of his criminal history and the underlying conduct. Although Hoff had a criminal history category of I, at sentencing, the district noted that there were four and

a half pages of Hoff's criminal history ranging from "assault and battery, and criminal damaging, and vandalism, and criminal mischief, and petty theft, and disorderly conduct, and falsification, domestic violence, and stalking, aggravated menacing." R. 55, PageID 327. In light of Hoff's past criminal conduct, the district judge told Hoff at sentencing: "You've violated protective orders in the past and yet you have no criminal—no countable criminal history for purposes of this case simply because of the age. Clearly, those things happened when you were a younger man, but in your 60s you made phone calls like this that tell us that you haven't learned anything from the previous incidents and your previous opportunities on probation." *Id.* at 338–39. The district judge also noted that "this is not your typical threat case" given that Hoff "threaten[ed] a member of [C]ongress'[s] family, their minor child," and that "the kind of language that [Hoff] used is well beyond the pale and well beyond the boundaries of civil discourse." *Id.* at 338. Though receptive to the considerations raised by Hoff, the district court concluded that "an above-guideline sentence is sufficient in this case" in light of the underlying conduct and Hoff's criminal history. *Id.* at 340. Given these considerations, we hold that district court did not abuse its discretion in imposing its sentence. *See United States v. Robinson*, 892 F.3d 209, 214 (6th Cir. 2018) ("[A] district court does not commit reversible error simply by 'attach[ing] great weight' to a few factors." (alteration in original) (quoting *Gall*, 552 U.S. at 57)); *United States v. Jeter*, 721 F.3d 746, 750, 757–58 (6th Cir. 2013) (holding that defendant's above-Guidelines range sentence was substantively reasonable where defendant failed to learn from past incarcerations, the underlying seriousness of the firearms offense, and the effect of the offense on the surrounding community).

Lastly, Hoff argues, relying on *Watts*, that Hoff's messages did not rise to the level of a "true threat" and "even if they did, they borderlined on being protected speech and did not justify his being sentenced above his guidelines range." Appellant Br. at 26. As noted earlier, Hoff's

voice messages were delivered in a very different setting than the context of the statements in *Watts*. Hoff's voice messages fall outside bounds of the constitutionally protected speech and into the category of unconstitutionally protected threats if a reasonable person would view those statements as a serious intention to inflict bodily harm. At sentencing, the district court made such a finding: it remarked that "in concert with the actions that occurred on that baseball field, the timing of the June 18th phone call, to the hearer would scare the hell out of anyone." R. 55, PageID 337. This finding was not clearly erroneous based upon what Hoff said in his messages. Thus, Hoff's speech meets the legal definition of a threat, and the district court did not sentence Hoff based upon constitutionally protected speech.

We therefore **AFFIRM** the district court's sentence as it is substantively reasonable.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's judgment and sentence.